UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JANESIA DANIELLE STROUD,                         :
                                                 :
                              Plaintiff,          :
                                                 :                **MEMORANDUM & ORDER**
          -against-                              :                14-CV-3281 (DLI)
                                                 :
TYSON FOODS, INC. and WENDY'S                    :
INTERNATIONAL, LLC,                              :
                                                 :
                              Defendants.         :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Janesia Danielle Stroud ("Plaintiff") filed the instant action against defendants Tyson Foods, Inc. ("Tyson") and Wendy's International, LLC ("Wendy's") (collectively, "Defendants") alleging a variety of state law claims arising out of injuries Plaintiff suffered from consuming a chicken nugget at a Wendy's franchise restaurant located in Valdosta, Georgia. (*See* Amended Complaint ("Compl."), Dkt. Entry No. 2.) Defendants, both foreign corporations, move to dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (*see* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), Dkt. Entry No. 9-6), which Plaintiff opposes (*see* Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n") Dkt. Entry No. 12). For the reasons set forth below, Defendants' motion is granted and this action is dismissed.

**BACKGROUND**

Plaintiff alleges that, on September 5, 2013, while at a Wendy's franchise restaurant located in Georgia, she swallowed "masticated chicken nuggets" and "felt a sharp pain from something sharply pointed and rough in her throat or pharynx." (Compl. ¶ 22.) She "began to gag and choke" and "cough[ed] up hard, sharp objects." (*Id*. ¶ 23.) She sought immediate

medical treatment for her injuries, but continues to suffer from persistent throat pain. (*Id*. ¶¶ 30-39, 43-50.) Plaintiff alleges that the restaurant at issue was "controlled, leased, owned, maintained, managed and/or operated by Defendants." (*Id*. ¶ 20.) Plaintiff further alleges that Tyson manufactured the chicken nuggets that caused her injuries. (*Id*. ¶ 21.)

Notably, in this diversity action, the complaint is void of any allegations regarding Plaintiff's domicile. According to a medical record that Defendants submitted, Plaintiff is a resident of Georgia. (*See* Sept. 18, 2013 South Georgia Medical Center Bill, attached as Exhibit B to the Affidavit of Roberto Uribe ("Uribe Aff."), Dkt. Entry No. 9-2.) Tyson is incorporated in Delaware and its principal place of business is Arkansas. (Compl. ¶¶ 3-6.) Wendy's is incorporated in Ohio and its principal place of business is Ohio. (*Id*. ¶¶ 9-15.)

There are no allegations regarding potential grounds for exercising personal jurisdiction over Defendants. In response to the instant motion, Plaintiff asserts that Defendants are subject to general jurisdiction as they are "engaged in business" of a "continuous and systematic" nature in New York. (Pl.'s Opp'n at 9.) Plaintiff points to a Tyson manufacturing plant located in Buffalo, New York. (*Id*. at 10.) According to Plaintiff, Tyson operates this plant under the name of its alter ego, Zemco Industries, Inc. ("Zemco"). (*Id*. at 10-11.) Zemco is incorporated in Delaware and its principal place of business is Arkansas. (*See* N.Y.S. Dep't of State Entity Information for Zemco, attached as Exhibit J to the Declaration of Brian L. Ponder ("Ponder Decl."), Dkt. Entry No. 11; Ponder Decl. ¶ 34.)

Plaintiff also points to numerous franchised restaurants that Wendy's operates in New York, as well as Wendy's solicitation of applicants for a "Facilities Technician" position in Farmingdale, New York. (Pl.'s Opp'n at 12-13.) Plaintiff notes that Wendy's operates more than 6,500 restaurants globally. (*Id*. at 13.) Plaintiff asserts that one of Wendy's subsidiaries,

Wendy's Old Fashioned Hamburgers of New York ("Wendy's New York"), operates facilities in New York. Wendy's New York is incorporated in and has its principal place of business in Ohio. (Ponder Decl. ¶ 53; Pl.'s Opp'n at 13.)

The complaint lacks any allegations regarding Zemco's or Wendy's New York's involvement with or connection to the alleged tainted chicken nuggets. Neither Zemco nor Wendy's New York are named as defendants in this action.

## DISCUSSION

### I. Motion to Dismiss Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). "[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). To make a prima facie showing that jurisdiction exists, a Plaintiff must demonstrate: (1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction over the defendant; and (3) that exercise of jurisdiction over the defendant is in accordance with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). "In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor." *HomeoPet LLC v. Speed Lab., Inc.*, 2014 WL 2600136, at *5 (E.D.N.Y. Jun. 11, 2014) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001)). "However, the Court will neither 'draw argumentative inferences in the plaintiff's favor,' nor 'accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Licci*, 673 F.3d at 59).

**II.     Application**

Defendants do not challenge service of process.  Thus, the Court turns to the second and third elements of Plaintiff's prima facie case.  With respect to the statutory basis for jurisdiction, "[t]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas*, 470 F.3d at 495; *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits.").  This Court is located in New York State; therefore, New York law provides the relevant statutory bases for jurisdiction. *See HomeoPet*, 2014 WL 2600136 at *5 (explaining that New York provides two statutory bases for jurisdiction over defendants in diversity actions in this district).

Under New York law, "[f]or a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301," known as general jurisdiction, "or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302," known as specific jurisdiction. *Reich v. Lopez*, 2014 WL 4067179, at *11 (S.D.N.Y. Aug. 18, 2014) (internal alterations and quotations omitted) (quoting *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010)).  "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity"; whereas, "[s]pecific jurisdiction . . . permits adjudicatory authority only over issues that 'aris[e] out of or relate[e] to the [entity's] contacts with the forum." *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014) (alteration in original).

### A.    General Jurisdiction

Under Section 301, a corporation "is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petro. Co.*, 226 F.3d 88, 95 (2d Cir. 2000). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 65, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)); *accord Wiwa*, 226 F.3d at 95. Thus, to establish jurisdiction over a foreign corporate defendant under Section 301, a plaintiff must demonstrate that the defendant "engaged in 'continuous, permanent, and substantial activity in New York.'" *Wiwa*, 226 F.3d at 95 (quoting *Landfill Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

Remarkably, none of the parties discussed the impact of the Supreme Court's recent opinion in *Daimler AG v. Bauman* on this Court's analysis of general jurisdiction. In *Daimler*, the Supreme Court addressed, for the first time, the specific issue of whether "a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary" as a matter of constitutional due process. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 759 (2014). The Court concluded that general jurisdiction exists only where a corporation is "essentially at home." *Id*. at 761-62. The Court identified two "paradigm bases" for asserting general jurisdiction over a corporation, its place of incorporation and its principal place of business. *Id*. at 759-60. "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id*. at 760. Since *Daimler*, the Second Circuit has explained that a corporation may be subject to general

jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Gucci*, 768 F.3d 135 (quoting *Daimler*, 134 S.Ct. at 761-62); *see also Sonera Holding B.V. v. Cukurova Holding A.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam) ("The natural result of general jurisdiction's 'at home' requirement is that 'only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.'" quoting *Daimler*, 134 S.Ct. at 760).

In light of *Daimler*, it is uncertain whether New York's "doing business" jurisprudence remains viable as a statutory means of exercising general jurisdiction over a foreign corporate defendant. *See Gucci*, 768 F.3d at 135 (explaining that, in articulating the constitutional due process requirements for general jurisdiction, "the Court expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum"); *Reich*, 2014 WL 4067179, at *12 (recognizing that, as a result of *Daimler*, "it is unclear whether existing New York general jurisdiction jurisprudence remains viable").

Regardless of whether New York's statutory basis for general jurisdiction survives *Daimler*, it is clear that this Court's exercise of general jurisdiction over Defendants would be inconsistent with constitutional due process as articulated in *Daimler* and interpreted by the Second Circuit. Neither Tyson nor Wendy's is headquartered or incorporated in New York. (*See* Uribe Aff. ¶¶ 3-6, 9-15.) Thus, Defendants are not "at home" in New York under either of the two "paradigm bases" for general jurisdiction. *See Daimler*, 134 S.Ct. at 760 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (internal quotations and alterations omitted)).

The only ground for asserting general jurisdiction over Defendants is that their contacts with New York are significant enough to qualify as an "exceptional case" to the stringent "at home" standard. As the Supreme Court explained, the *Daimler* standard for general jurisdiction did "not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. 761 n.19 (internal citations omitted). The Court further explained that, to fall within an "exceptional case," a plaintiff must demonstrate that the defendant's contacts with the forum were "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Id*. at 761.

The *Daimler* plaintiffs failed to meet this burden. They filed their action in California, against a corporation that was neither headquartered nor incorporated in California, regarding allegations of human rights violations that occurred in Argentina. *Id*. at 750-51. The corporation had a subsidiary, which was neither headquartered nor incorporated in California, and was not named as a party to the litigation. *Id*. at 752. The subsidiary imported vehicles from the parent corporation and sold them to independent dealerships in California, as well as the rest of the United States. *Id*. The subsidiary's sales of the corporation's vehicles in California accounted for 2.4% of the corporation's worldwide sales. *Id*. In concluding that the plaintiffs failed to establish an "exceptional case" for general jurisdiction over the corporate defendant, the Supreme Court explained that "[i]f [the corporation's] California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable." *Id*. at 761. Indeed, "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-

of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As at least one circuit has recognized, under the standard articulated in *Daimler*, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Turning to the instant action, Plaintiff has failed to demonstrate that Defendants' contacts with New York are so significant that they fall within the "exceptional case" hypothesized in *Daimler*. Plaintiff points to Tyson's operation of a manufacturing plant in Buffalo, New York, by its alter ego, Zemco, as a ground for exercising general personal jurisdiction over Tyson. (Pl.'s Opp'n at 10-12.) Notably, Zemco, too, is a foreign corporation as it is incorporated in Delaware and its principal place of business is Arkansas. (*See* Ponder Decl. Ex. J.)

The Court makes no findings as to whether the contacts of Tyson's alter ego, Zemco, can be attributed to Tyson for purposes of personal jurisdiction analysis. Under long-standing precedent in this Circuit, "a court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." *Wiwa*, 226 F.3d at 95. However, that agency analysis, for purposes of personal jurisdiction analysis, was called into question by *Daimler*. *See Daimler*, 134 S.C.t at 759-60 (rejecting the Ninth Circuit's agency analysis because that analysis "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general

jurisdiction' we [previously] rejected"); *see also Sonera*, 750 F.3d at 225 ("*Daimler* expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa*, that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego."). Regardless of the nature of the relationship between Zemco and Tyson, neither of those companies' contacts, viewed together, or separately, are sufficient to deem Tyson "at home" in New York.

However, assuming, without deciding, that Zemco's contacts can be attributed to Tyson, the operation of the Buffalo manufacturing facility is insufficient to establish that Tyson is "at home" in New York. The subsidiary in *Daimler* operated "multiple California-based facilities" and was the "largest supplier of luxury vehicles to the California market"; however, the Supreme Court concluded that those contacts were insufficient to establish that either the parent corporation or the subsidiary were "at home" in California. *See Daimler*, 134 S.Ct. at 761-62. By Plaintiff's own admissions, the Buffalo manufacturing facility is just one of hundreds of manufacturing plants operated nationwide by Tyson and its affiliates and subsidiaries, and is Tyson's only New York contact. (*See* Exs. G & H to the Ponder Decl.) Thus, Tyson's New York contacts are less significant than the contacts of the subsidiary in *Daimler*.

Plaintiff's attempt to tether the exercise of general jurisdiction over Wendy's to the contacts of Wendy's subsidiary, Wendy's New York, is equally unavailing. Wendy's New York is headquartered and incorporated in Ohio. (*See* Ponder Decl. ¶ 53; Pl.'s Opp'n at 13.)

The Court makes no findings as to whether the contacts of Wendy's subsidiary can be attributed to Wendy's for purposes of personal jurisdiction analysis. As the Second Circuit has explained, when "the claim is that the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the

parent's presence in the state." *Jazini v. Nisan Motor. Co. Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984)). "For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Id*. (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996)). Plaintiff's submissions are void as to any allegations that Wendy's New York is an agent or a mere department of Wendy's. Moreover, as set forth above, the *Daimler* Court expressed doubt as to the viability of attributing the contacts of a subsidiary to its parent for personal jurisdiction analysis.

Assuming, without deciding, that Wendy's New York's contacts with New York can be attributed to Wendy's, these contacts, too, are less significant than the contacts of the subsidiary in *Daimler* with the forum state. By Plaintiff's own admissions, Wendy's and its subsidiaries operate over 6500 restaurants worldwide. The notion that Wendy's can be considered "at home" in every forum in which it operates restaurants was specifically rejected in *Daimler*. *See Daimler*, 134 S.Ct. at 761-62 (rejecting the claim that a corporation can be considered "at home" in a forum in which its subsidiary had sizable sales as an "exorbitant exercise[] of all-purpose jurisdiction" because "the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable").

Under these circumstances, Plaintiff has failed to establish that Defendants are subject to general jurisdiction. *See Gucci*, 768 F.3d at 135 (concluding that there was no general jurisdiction over a foreign bank that operated four branch offices in the United States, but conducted "a small portion of its worldwide business" in New York, as the bank was neither headquartered nor incorporated in New York and the bank's contacts with New York were not representative of "an exceptional case"); *Sonera*, 750 F.3d at 226 (holding that a foreign

corporation with New York affiliates and offices located in New York was insufficient to establish that the corporation was "at home" in New York); *Continental Indus. Group, Inc. v. Equate Petro. Co.*, ___ F. App'x ___, 2014 WL 5066321, at *2 (2d Cir. 2014) (affirming dismissal for lack of personal jurisdiction as plaintiff "has not alleged that [defendant] is headquartered or incorporated in New York, nor has [plaintiff] alleged facts sufficient to show that [defendant] is otherwise 'at home' in New York"). Accordingly, the Court lacks authority to exercise general jurisdiction over Defendants.

### B.      Specific Jurisdiction

Alternatively, Plaintiff contends that Defendants are subject to specific jurisdiction under two different provisions of New York's long-arm statute, N.Y. C.P.L.R. § 302(a). Under the long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . (4) owns, uses or possesses any real property situated within the state" . . . so long as the "cause of action arises[es] from" that transaction. N.Y. C.P.L.R. § 302(a).

#### 1.      Section 302(a)(1)

To determine whether personal jurisdiction may be exercised over a particular defendant under Section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 60 (2d Cir. 2012) (quoting *Best Van Lines, Inc., v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). A defendant transacts business in New York if it has "purposely availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law." *D.H. Blair & Co. v.*

*Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006); *see also Licci*, 673 F.3d at 61. "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Licci*, 673 F.3d at 66 (quoting *Best Van Lines*, 490 F.3d at 246).

Plaintiff has failed to demonstrate that there is personal jurisdiction over Defendants under Section 302(a)(1). Assuming, only for purposes of resolution of this motion, that Defendants transacted business in New York, Plaintiff's submissions are void of any allegations that Plaintiff's claims regarding the "masticated chicken nuggets" arise out of Defendants' New York activities. Absent such a showing, there is no authority to exercise personal jurisdiction over non-domiciliary defendants under Section 302(a)(1). *See Barrett v. Tema Devel. (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (affirming dismissal for lack of personal jurisdiction under Section 302(a)(1) because, "whether or not [defendant] 'transacted business' in New York, [plaintiff's] claims do not arise out of any New York transactions"); *Zibiz Corp. v. FCN Tech. Sols.*, 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011) (concluding that plaintiff failed to establish personal jurisdiction over a Maryland corporation under Section 302(a)(1) for plaintiff's contract claim because the contracts at issue were neither negotiated nor executed in New York and thus, did not arise from defendant's alleged New York transactions). Accordingly, there is no authority to exercise personal jurisdiction over Defendants under Section 302(a)(1).

### 2. Section 302(a)(4)

Plaintiff alleges that Defendants "own, use or possess real property situated within" New York and, thus, are subject to personal jurisdiction under Section 302(a)(4). (Pl.'s Opp'n at 14.) Similar to personal jurisdiction requirements under Section 302(a)(1), to allege personal jurisdiction over a non-domiciliary defendant under Section 302(a)(4), a plaintiff must

demonstrate "a relationship between the property and the cause of action sued upon." *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159 (1st Dep't 1992) (concluding that the complaint failed to allege personal jurisdiction under Section 302(a)(4)). Assuming, only for purposes of resolution of this motion, that Defendants own, use or possess real property in New York, Plaintiff's submissions are void of any allegations as to the relationship between Defendants' properties in New York and Plaintiff's consumption of "masticated chicken nuggets" in Georgia. Absent the showing of such a relationship, courts decline to exercise personal jurisdiction over non-domiciliary defendants under Section 302(a)(4). *See A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 574 (E.D.N.Y. 2011) (holding that plaintiff failed to establish jurisdiction over defendant under Section 302(a)(4) as the plaintiff could not "identify any . . . relevant property or allege any connection between property in New York State and the claimed injury"); *Audiovisual Publishers, Inc. v. Manor Care, Inc.*, 2006 WL 3511345 at *11 (W.D.N.Y. Dec. 5, 2006) (adopting report and recommendation finding that plaintiff failed to establish personal jurisdiction over defendant under Section 302(a)(4) because "ownership is insufficient to confer personal jurisdiction over [defendant] absent some relationship between [plaintiff's] claims and the real property"). Accordingly, there is no authority for the exercise of personal jurisdiction over Defendants under Section 302(a)(4).

## II.    Venue

Defendants did not challenge the selection of this District for the litigation of Plaintiff's claims. However, it bears noting that: Plaintiff was injured in Georgia; Plaintiff resides in Georgia; the witnesses presumably reside in Georgia; Defendants are foreign corporations; and there is no known connection to New York other than the offices of Plaintiff's counsel.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted and this case is

dismissed, without prejudice to bringing this action in the appropriate forum.

SO ORDERED.

Dated: Brooklyn, New York
      March 10, 2015

_____/s/_____
DORA L. IRIZARRY
United States District Judge
